IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

)
DONALD L. DAILEY, SR.,                    )
    Petitioner,                          )
                                         )
    v.                                   )    Civ. A. No. 07-462-LJF
                                         )
THOMAS L. CARROLL, et al.,                )
    Respondents.                         )
                                         )

**FILED**

FEB 1 4 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

                                                                                          ⓑ scanned

### PETITIONER'S REPLY TO RESPONDENTS' ANSWER

    This is the Petitioner's reply to the Respondents answer. The Respondents'
allege that the petition for a writ of habeas corpus should be dismissed for
three (3) distinct reasons. The Petitioner will address each of the reasons
below:

    The Respondents' aver that the Petition must be dismissed for untimeliness
under 28 U.S.C. § 2244 because it is not filed within the 1-year limitation
period and equitable tolling is not applicable,(Answer, 3-5).

    The Respondents admit that equitable tolling applies  when "the defendant
has actively misled the plaintiff" or "if the plaintiff has 'in some extraordinary
way' been prevented from asserting his rights." Respondents  state that Petitioner
asserts that his petition should not be dismissed as untimely because he is
actually innocent, did not understand the legal procedures and is mentally
incompetent, that jailhouse lawyers took advantage of him, inmate workers in the
law library paid by the State to assist him have not; and that the attorneys and
judge threatened him into accepting the plea agreement he attempted withdrawal
from,(Answer, 4). Respondents state that these conclusory allegations do not
make out any basis for equitable tolling, that Petitioner's filings in the State

1

Courts refute his claim of mental incompetency preventing him from timely seeking federal habeas corpus, and ignorance of the law and reliance upon the jailhouse lawyers are insufficent to warrant equitable tolling,(Answer,5). What Respondents do not convey to this Court is the fact that while Petitioner waited until June 6, 2005, or 1 year after direct appeal and time to seek the review of the United States Supreme Court, to file his first postconviction motion is the fact that Petitioner was sequestered in the Pretrial section of the prison and unable to seek the help of others. Also, the law library workers do little more than give one books and material; they do not assist in forming legal theories, drafting documents, et cetera. See Affidavit of the Petitioner, (A-42).

The Constituion guarantees **meaningful** access to the courts. Bounds v. Smith, 430 U.S. 817, 824,828 (1977).This guarantee imposes an affirmative duty on prison officials to **assist inmates in preparing and filing legal papers** either by establishing **adequate** law libraries or providing **adequate** assistance from persons trained in the law. Respondents have a greater duty imposed by the Court, (A-36 ). Bounds at 828; Allah v. Sheiverling, 229 F.3d 220,225 (3rd Cir. 2001). The demonstrated **actual injury** of Petitioner's claims being procedurally defaulted is an allegation of Constitutional violation. Lewis v. Casey, 518 U.S. 343, 349 (1996). The restrictive policy of the Sussex Correctional Institution law library in not providing current Reports (especially Supreme Court Reports), not allowing inmates to talk and help one another via of discussing legal theories, legal procedures, et cetera; and the practice of the inmate workers doing little more than issuing books is an **actual injury** obstructing access. Gentry v. Duckworth, 65 F.3d 555, 559 (7th Cir. 1995)(failure to provide help); Bear v. Kautzky, 305 F.3d 802, 804 (8th Cir. 2002); Gilmore v. California, 220 F.3d 987, 1008-09 (9th Cir. 2000)(outdated books inadequate). See Affidavit of Petitioner,(A-42 ).

2

These restrictions **forced** Petitioner to seek assistance from the questionable, oftentimes **shady** self-professed jailhouse lawyers. The failure of the officials to carry out their affirmative duty to help Petitioner **prepare** and **timely file** petitions is clearly a misleading of Petitioner in the belief of obtaining help, and it prevented him from asserting his rights in an extraordinary way. Jones v. Martin, 195 F.3d 153, 158 (3rd Cir. 1999). One need only to review the first postconviction motion filed for Petitioner by self-proclaimed jailhouse lawyer Scott Alexander to see the advantage taken and harm done; he haphazardly drafted the petition on a law library form and submitted it without memorandum of law or appendix of exhibits, which was instantly dismissed by the court. See Affidavit of Petitioner,(A-42); see Judge Graves order dismissing petition in the original appendix A-6. See Alexander postconviction motion, (A-2)

This Court should conduct an evidentiary hearing on this issue for the purpose of determining how much of an impediment these policies and practices were in the Petitioner's effort to litigate effectively and timely, and to determine whether equitable tolling is appropriate and limited to the instant case. 28 U.S.C. § 2254(e)(2).

Respondents comply with the Court's directive to address the exhaustion issue of the asserted claims and admit that Petitioner has presented each claim to the highest State court and aver that this Court "must then assure itself that a habeas petitioner has complied with relevant state procedural requirements before it can delve into the claim of Costitutional error in State convictions," (Answer, 5). Respondents then aver that all of petitioner's claims are procedurally defaulted because they were either not submitted in the direct appeal, addressed in the direct appeal, or in the first postconviction motion and was not appealed thereafter, saying that this federal Court may not consider the merits of procedurally defaulted claims unless the Petitioner demonstrates cause

3

for the default and resulting prejudice, **or a fundamental miscarriage of justice,**(Answer, 6,7). Respondents complete they exhaustion comments in saying that Petitioner's plea colloquy demonstrates that his guilty plea was not coerced and prevented any finding of a **miscarriage of justice** has taken place that would permit this Court to consider the merits of Petitioner's procedurally defaulted claimes because he made a voluntary and intelligent acceptance of the plea agreement,(Answer, 7,14).

The Petitioner has consistently asserted that the State procedural bars do not apply to the instant case because of the **miscarriage of justice** resulting from the conviction of an **actually innocent** person. Federal Courts "may entertain an application for a writ of habeas corpus only on the ground that the confinement violates the Constitution, laws, or treaties of the United States." 28 U.S.C. § 2246(C)(3); 2254(a). Relief for violations of federal law will be granted if the violation rises to the level of a "fundamental defect which inherently results in a **complete miscarriage of justice**," or is **inconsistent with the rudimentary demands of fair procedure.** Reed v. Farley, 512 U.S. 339, 352-54 (1994), quoting, Hill v. United States, 368 U.S. 424, 428 (1962). Throughout the State Courts the Petitioner alleged that a **miscarriage of justice** occurred in his case which calls into question the fundamental fairness of the proceedings leading to conviction, the reliability of the conviction, and the integrity of the judicial process in the court; and that Rule 61(i)(5) of the postconviction policy provided an exception to the customary procedural default bars. This was clearly presented to the Delaware supreme Court in Petitioner's Opening Brief. See Opening Brief, Pp. 3,18,(A-*4*, 9 ). That Court held that Petitioner had presented no evidence of a **miscarriage of justice** to warrant relief,(A-*12*,*13*);See Habeas Corpus Appendix of Exhibits,(A-*12* ). The customary presumption of correctness of State Court findings do not apply when State Court findings are not

4

clearly supported by the record. Meyers v. Gillis, 142 F.3d 664, 666 (3rd Cir. 1998). The record clearly reveals that counsel failed to conduct the required Pre-trial investigation to develop leads and present the testimony of alleged victims recanted police statements or request a hearing on the matter after the Judge apprised him of the recantations, (A-*15* to*25* ). The record reveals that counsel applied coercive **pressure** on Petitioner to accept the plea agreement by having Petitioner's family write letter **begging** Petitoner to accept the plea for their sakes and less Level 5 time, which was orchestrated after Petitioner made a motion to withdraw from the plea, (A-*26* to*33* ). Counsel acquiesced in a threat by the prosecutor to commense proceedings against Petitioner's daughter if he did not accept the plea agreement, (A-*26* ). The record reflects that counsel became allies with the Judge in **allowing the Judge to unconstitutionally enter the plea negotiation process, threaten Petitioner** with going from the **frying pan into the fire and thanking God for unanswered prayer,** and **telling Petitioner to discuss the matter further with his attorney,** (A-*34* ).

Pleas induced by threats, promises, coercive pressure...may not, as a matter of law, stand as valid convictions. Mabry v. Johnson, 467 U.S. 504 (1984); Libretti v. United states, 516 U.S. 29 (1994). Such pleas are devoid of voulntary character and must be voided. Lesko v. Lehman, 925 F.3d 1527 (3rd Cir. 1991), cert. denied, 502 U.S. 898; MacDonald v. State, Del. Supr., 778 A.2d 1069, 1074-75 (2001). Counsel must investigate potentially mitigating evidentiary leads. Lockett v. Anderson, 230 F.3d 695, 716 (5th Cir. 2000); MacDonald.

Petitioner pled  guilty after attempting to withdraw the plea only because of the pressures applied by family members and the threats from the attorneys and judge. Petitioner asserted a claim of **actual innocence** and it applies to case in which one pleads guilty because of **"family obligations"** or threats of a **"greater sentence"** as was done in the instant case. Ex Parte Tuley, 109 S.W. 3d

388 (Tex. Crim. App. 2002)(en banc). The MacDonald Court clearly conveyed that a judge cannot become allies with the attorneys in securing an unconstitutional conviction via the plea agreement process. Id. at 1075-76. Our Federal Courts have expressed this same priciple in a long line of cases – holding that this type of Rule 11(e)(1) misconduct is reviewable under the plain error doctrine because the coercive impact on the defendant is so inevitable that prejudice is automatically presumed. United States v. Bruce, 976 F.2d 552 (9th Cir. 1992). [1]

In the Johnson Court it was determined that "the purpose and meaning of the Rule 11(e)(1) provisions are that 'the sentencing judge should take no part whatsoever in any discussions or communication regarding the sentence to be imposed prior to the entry of a plea of guilty.'" United States v. Johnson, 89 F.3d 778 (11th Cir. 1996); see United states v. Ebel, 229 F.3d 187, 190 (3rd Cir. 2002). The Bruce Court stated that "a judge should refrain because it carries the risk of coercing a defendant to accept a plea, coerce into aninvoluntary plea he would not otherwise accept." Bruce at 556. That is exactly what occurred in the instant case! Petitioner accepted a plea, motioned to withdraw, was then switched from Judge Bradley to Judge Graves and before the final acceptance of a coerced plea was threatened by threatened by the Judge that Petitioner should **thank God for unanswered prayers** because he was going from the **pan to the fire** and that he **should go discuss the matter further with his attorney,**(A-$34$ . ). "A coerced plea would not only violate defendant's Constitutional rights but also necessarily risk the incarceration of even **innocent criminal defendant's.** Id., citing, Waley v. Johnson, 316 U.S. 101, 104 (1942). Counsel allowed Judge Graves to do exactly

---

1. United States v. Corbitt, 996 F.2d 1132 (11th Cir. 1993); United States v. Barrett, 982 F.2d 193 (6th Cir. 1993); United States v. Crowell, 60 F.3d 199 (5th Cir. 1995); United States v. Casallas, 59 F.3d 1173 (11th Cir. 1995); United States v. Johnson, 89 F.3d 778 (11th Cir. 1996)

6

what the Casallas Court prohibited in implying a greater penalty and followed
it with **threats of Petitioner going from the pan to the fire if he did not
accept the plea, that he should thank God for unanswered prayers, and further
discuss the matter with his attorney.** United States v. Casallas, 59 F.3d 1173,
1177 (11th Cir. 1995)("talk to his lawyer some and see if that's really what he
wants to do."), citing, Bruce and other cases,(A-$34$      ).

    While Respondents state that the petitioner's plea colloquy proves there was
no **miscarriage of justice** the fail to tell this Court that it ignores all the
[$\overline{\text{failure}}$]
                              ^
allying between the Judge and attorneys and the threats and other coercive facts
from the transcripts prior to the colloquy, which makes the plea devoid of and $\overline{\text{any}}$
voluntary and intellectual character,(A-$34$      ). Lesko. An innocent man was
threatened and forced into a plea agreement he motioned to withdraw from. The
plain error review applies where no contemporaneous objection was made to chall-
enge the plea colloquy. United States v. Simpkins, 67 Fed. Appx. 704 (3rd Cir.
2003); United States v. Dixon, 308 F.3d 229 (3rd Cir. 2002). The Bruce Court has
held that a reviewing court (such as the Delaware supreme Court) has an ethical
duty to reverse sua sponte under the plain error doctrine even if recognized for
the first time on appeal. Bruce at 554, quoting, United Sates v. Adams 634 F.2d
830, 831 (5th Cir. 1981), citing, United States v. Sanchez-Lopez, 879 F.2d 541,
551 (9th Cir. 1989)(reviewing claim of **judicial misconduct**).

    Counsel did not know the relevant federal and state statutes and case law for
the term "sexual predator" that the sentencing judge applied in determining his
sentence and "repetitive offender" term the appellate court gave the erroneous
term "sexual predator" in its effort to rehabilitate the trial court judge's
improper sentencing factor (sexual predator) which was not supported by the
record,(A-$35$     , sentencing transcript; A-$/2$  , Supreme Court order). The
term "sexual predator" is clearly defined in Black's Law Dictionary and derives

7

from the United States supreme Court decision on Megan's Law, which brought
about the Statute related to sexual predators as a guideline for States wishing
to enact similar statutes. See 42 U.S.C. § 14071(a)(2)(C)(D)(E). Consequentially,
counsel was ill-prepared to argue at sentencing that the Court could only make
a determination that the petitioner was or was not a "sexual predator" for the
purpose of enhancing the sentence after Petitioner had been eaxamined by the
required State Board of experts in the sciences and their determination was a
matter of record. Further , when the Appellate Court uncostituionally rehabili-
tated the improper sentencing term and called it permissible under the State's
"repetitive offender" term counsel was ill-prepared to argue that Petitioner did
not have the required two or more previous, separate offenses. Nor did counsel
seek review of these egregious constitutional violations on certiorari in the
United States Supreme Court. Sentencing Judges are not allowed to base sentences
on any factor that is not supported by the record. The record clearly reveals
that the Petitioner is neither been determined by a State Boeard as a "sexual
predator" under the federal statute and does not have the requisite number of
previous offenses under Delaware law. $2 U.S.C. § 14071(a)(2)(C)(D)(E); Siple v.
State, Del. Supr., 701 A.2d 79, 84-85 (1997); SENTAC Sentencing Benchbook, 2005.
This was presented to the Delaware Supreme Court. See Opening Brief at 11,14,
(A- 6,7 ). The denial of these determinations violates due process. See Davis
v. Strack, 270 F.3d 111, 132 (2nd Cir. 2001; Cockerham v. Cain, 283 F.3d 657, 663
(5th Cir. 2002); Ho v. Carey, 332 F.3d 587, 595-96 (9th Cir. 2003). These acts
by counsel fell below the professional level of reasonableness and prejudiced
the Petitioner in that he was forced to plead guilty out of fear for his family
and the greater penalty the judge indicated not accepting the plea would entail,
and caused the enhancement of the penalty due to reliance on impermissible
criteria Petitioner did not fit; and being actually innocent as the victims'

8

recanted statements prove, Petitioner would have gone to trial had it not been for the errors of counsel. Strickland v. Washington, 466 U.S. 668, 687 (1984); Lindstandt v. Keane, 239 F.3d 191, 202 (2nd Cir. 2001)(failure to conduct the necessary research or consult the law on expert opinion); Lockett; Dixon.

Relief is available for claims adjudicated on the merits in State Courts when the holding is "contrary to or involved an unreasonable application of clearly established federal laws as determined by the Supreme Court, or based on an unreasonable determination of the facts. The Megan's law and statutory derivative are clearly established with respect to a judge categorizing a defendant as a sexual predator; the Petitioner ahs not been determined such by a State Board and, thus, the judge's determining him such is contrary to and involves an unreasonable application of those laws; and it is an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 405 (2000). Failure of the Federal Court to review these claims on habeas corpus will "result in a fundamental **miscarriage of justice**," which supports this Court's consideration of relief despite procedural default. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

The Carrier Court stated that procedural default would be excused, even in the absence of cause, when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murry v. Carrier, 477 U.S. 478, 496 (1986); See Haley v. Cockrell, 306 F.3d 257, 266-67 (5th Cir. 2002)(Procedural default excused under actual innocence exception on **noncapital** case because a reasonable jury could not convict the petitioner of two prior felonies that enhanced petitioner's sentencing as a habitual felony offender); Gonzales v. Abbott, 967 F.2d 1499, 1504 (11th Cir. 1992)(excused under actual innocence exception because claim, if true, rendered conviction void and could not be legal cause of incarceration); Henderson v. Sargent, 926 F.2d 706, 713-14 (8th

9

Cir.)(actual innocence and trial counsel's failure to investigate and develop leads).

The respondents aver that the prosecutor's threats to coerce petitioner into accepting the plea agreement by avowing to commense proceedings against the Petitioner's daughter , and securing the conviction premised upon perjurous statements that alleged victims recanted, are not reviewable by this Court because they are procedurally defaulted as a result of not being raised on direct appeal, and being presented in the first postconviction motion but not appealed. (The facts and case-authority in the issues above on ineffective assistance of counsel are incorporated hereto by reference.) Counsel did not appeal these issue on direct review and the first haphazard postconviction motion by a shady jailhouse lawyer did was not supported by a memorandum of law nor appendix of exhibits so that the factual record record was adequately developed; the jailhouse lawyer merely slapped some inarticulate claims on a prison law library form and mailed it to the court,(A- $l$ to $3$ ). As opposed to conducting an evidentiary hearing, et cetera to develop the record and explore the claims, the judge dismissed the postconviction motion. See Habeas Corpus Appendix, A- $6$ to $9$ . These issues were presented to the State Supreme Court on appeal from the denial of the second postconviction motion to no avail. See Opening Brief at 10,11,17,18,(A-5,6 & 8,9).

The prosecutor and defense attorney colluded to suppress the recanted state- ments of the alleged victims, which violates due process. Weedon v. State, Del. Supr., 750 A.2d 521 (2000)(petitioner entitled to hearing on recanted statements); Napue v. Illinois, 360 U.S. 264, 269 (1959)(prosecutor has duty to correct perjury when brought to his attention); Kyles v. Whitney, 514 U.S. 419, 455 (1995)(due process violated by suppressing evidence). The customary bars to relief do not apply under these circumstances because an innocent man is imprisoned and plain error sua sponte reversal is an imposed duty for prosecutorial misconduct. See

Innocent Protection Act; Schlup v. Delo, 513 U.S. 298, 324, 329 (1995); Johnson
v. Carroll, 327 F.Supp. 2d 386 (D. Del. 2004); Suer. Ct. Crim. Rules, Rule 61(i)
(4); Delaware Rules of Evidence, Rule 504(a). The State Supreme Court erroneously
held , contrary to the Federal law above and to a reasonable determination of the
facts that a hearing was not necessary because there was nothing to indicate that
that the alleged victim's initial statements were untrue,(A- *13* ). The petitioner
supplied the appellate court with letters that the alleged victims sent to the
trial court judge, which letters the trial court judge acknowledged,(A-*15* to *25*).
See Opening Brief Appendix of Exhibits. This Court may conduct an evidentiary
hearing in which it may hear the direct testimony of the alleged victims, Judge
and attorneys along with that of the Petitioner's daughter. 28 U.S.C. § 2254(e)
(2).

The judge likewise refused to conduct a hearing on the issue of recanted state-
ments of the alleged victims , threatened Petitioner with greater penalties and
otherwise ignored the exceptions to the procedual default bars for those actually
innocent persons. (By reference the petitioner incorporates the facts and case-
authority in the issue of ineffective assistance of counsel above hereto.) The
Respondents misstate the facts, basically saying that Petitioner is merely making
a claim that the Judge mishandled his postconviction motion. The Petitioner's
claims go to the heart of the fact and duration of his plea negotiation process
and conviction, as well as the unreasonable determination of the facts and
holdings of the State Supreme Court with respect to established federal laws.
28 U.S.C. § 2254(d)(1); Williams. The red herring of the Respondent is the
untimely filing of the petition while the ignore the fact that it is of little
or no consequence when a claim of actual innocence was not properly addressed in
the State Courts – especially when the plain error doctrine demands that both
Prosecutorial Misconduct and Judicial Misconduct in the Rule 11(e)(1) plea

12

process be corrected sua sponte when discovered because its impact is automatically presumed and violates due process and fundamental fairness demands.

The State Supreme Court merely perfunctorily affirmed the conviction based on the Prosecutor's motion — erroneously holding that the bars to relief applied and the claims could not be reviewed,(A-/₀ to /₄ ). These holding by the State Supreme Court are not suitable for the customary presumption of correctness, particularly since they are questions of fact and mixed questions of fact and law. Miller v. Fenton, 474 U.S. 104, 113 (1995); Deputy v. Taylor, 19 F.3d 1485, 1496 (3rd Cir. 1994). An evidentiary hearing is permissible in this Court since the claims — especially the recanted statements, sexual predator/repetitive offender requisite and judge violating Rule 11(e)(1) provision — were not fully developed in the State Court proceedings. 28 U.S.C. § 2254(e)(2); Love v. Morton, 112 F.3d 131, 136 (3rd Cir. 1997)(judge's actions prevented development of record); 28 U.S.C. § 2254(a)(2)(A)(ii)('a factual predicate that could not have been previously discovered through exercise of due diligence"). Had it not been for the constitutional errors, no reasonable factfinder would have convicted. 28 U.S.C. § 2254 (e)(2)(B).

Wherefore, Petitioner prays that this Court will assume jurisdiction of the case, appoint counsel, conduct an evidentiary hearing, and hear all the claims on the entire record — issuing the writ of habeas corpus and set at liberty an **actually innocent man who has already served four(4) years of unconstitutional imprisonment.**

Respectfully submitted

Donald L. Dailey, Sr.

Donald L. Dailey, Sr.
Delaware Correctional Center
1181 Paddock Rd.
Smyrna, DE  19977

13

Certificate of Service

I, Donald L. Dailey,Sr., swear that I have served Mr. Gregory E. Smith
true copies of my Petitioer's Reply to Respondents' Answer via mail on this
11th day of February, 2008.

Donald L. Dailey, Sr.

Donald L.Dailey, Sr.
Delaware Correctional Center
1181 Paddock Rd.
Smyrna, DE 19977

Mr. Gregory E. Smith, Esquire
Department of Justice
820 N. French Street, 6th Fl.
Wilmington, DE 19801

**Extremely Urgent**

This envelope is for use with the following services:
**UPS Next Day Air.**
**UPS Worldwide Express...**
**UPS 2nd Day Air.**

Call 1-800-PICK-UPS® (1-800-742-5877) or visit UPS.com®.

- For UPS Next Day Air services, there is no weight limit for envelopes containing letters, business correspondence, urgent documents, and electronic media. When a UPS Next Day Air service is selected, UPS Express Envelopes containing items other than those listed above are subject to the corresponding rates for the applicable weight.

- For UPS Worldwide Express, the UPS Express Envelope

T U.S. DISTRICT COURT
C 844 N KING ST

- N WILMINGTON DE 19801-3519

co P:RED    S:LEFT    I:PDC

Do **AM1 - 2415**

Apply shipping documents on this side.

Do not use this envelope for:

**UPS Ground**
**UPS Standard**
**UPS 3 Day Select®**
**UPS Worldwide Expedited™**

(302) 420-0334
THE PARLROOMS
805 N ... AV
SEAFORD  DE 19973-1738

SHIP TO:
CLERK
U S DISTRICT COURT
844 NORTH KING STREET
WILMINGTON  DE 19801

LTR    1 OF 1



DE 197 9-20

UPS NEXT DAY AIR    1
TRACKING #: 1Z 3X6 688 01 4755 2605

BILLING: P/P

Invoice No.: 12 2 13 8

Inconvenient Shipping limits — Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions established by the Convention for the Unification of Certain Rules Relating to International Carriage by Air (the "Warsaw Convention") and/or the Convention on the Contract for the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or software were exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.
010195101  05/05  FAC  United Parcel Service, Louisville, KY

100% Recycled Fiber
80% Post-Consumer

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| **STATE OF DELAWARE** | ) | 1503010464 |
| | ) | 1503010465 |
| v. | ) | Cr. A. No. 150 -3010 -470 |
| | ) | |
| Donald Lee Dailey SR, | ) | I.D. No.# 0210012813 |
| **Correct Full Name of Movant** | ) | |
| | ) | |
| _____ | ) | |
| **Movant's Alias(es), if any** | ) | |
| | ) | |
| Date of Birth: 4 / 13 / 55 | ) | |
| SBI Number: 00257458 | ) | |

2005 JUN -6  PM 1:43

FILED PROTHONOTARY SUSSEX COUNTY

## MOTION FOR POSTCONVICTION RELIEF

1. The Court imposed Movant's sentence on the following date: August 7, 2003

2. The Judge who imposed the sentence was: Judge: Henley T. Graves

3. Offense(s) for which Movant was sentenced and length of sentence(s): _____

   Rape 3Rd - 15 Years _____

   Rape 3Rd - 10 Years _____

   Rape 3Rd - 10 Years _____

4. Do you have any sentence(s) to serve other than the sentence(s) imposed because of the judgments(s) under attack of this motion?   Yes(  )  No(X)
   If your answer is "Yes", give the following information:
   Name and location of Court(s) which imposed the other sentence(s):

   N/A _____

   N/A _____

   Date sentence(s) imposed: N/A _____

   Length of sentence(s): N/A _____

Ex. E

## AGGRAVATING-MITIGATING

**STATE OF DELAWARE**
**VS.**
**DONALD L DAILEY**
**DOB: 04/13/1955**
**SBI: 00257458**

> **CASE NUMBER:**
> **0210012813**

**AGGRAVATING**
PRIOR VIOLENT CRIM. ACTIVITY
OFFENSE AGAINST A CHILD

!**APPROVED ORDER**  *A*-8     August  8, 2003 15:08

CERTIFIED
AS A TRUE COPY

ATTEST

PROTHONOTARY

CLERK

5.    **What was the basis for the judgment(s) of conviction?**
   ( ) Plea of guilty
   ( ) Plea of guilty without admission of guilt ("Robinson Plea")
   (X) Plea of nolo contendere
   ( ) Verdict of jury
   ( ) Finding of Judge (non-jury trial)

6.    Judge who accepted plea or presided at trial:  Judge Henley T. Graves

7.    Did you take the witness stand and testify?    (X) No Trial  ( ) Yes  ( ) No

8.    Did you appeal from the judgment of conviction?   (X) Yes   ( ) No
   If your answer is "Yes", give the following information:
        Case Number of Appeal: _____

        Date of Court's final order or opinion: _____

9.    Other than a direct appeal from the judgment(s) of conviction, have you filed any other
   Motions or Petitions seeking relief from the judgment(s) in state or federal court?
   ( ) Yes  (X) No     How many?  N/A
   If your answer is "Yes", give the following information as to each:
        Nature of proceeding(s):  N/A

   _____ N/A _____

   Grounds raised:  N/A _____

   _____ N/A _____

   _____ N/A _____

   _____ N/A _____
   Was there an evidentiary hearing?  ( ) Yes   (X) No
   Case Number of proceeding(s)?  N/A
   Date(s) of court's final order(s) or opinions:  N/A
   Did you appeal the results(s):  N/A

10.   Give the name of each attorney who represented you at the following stages of the
   proceedings relating to the judgment(s) under attack in this motion:
   At plea of guilty or trial:  John F. Brady

   On Appeal:  N/A  John F. Brady

   In any postconviction proceeding:  N/A

11. State every ground upon which you claim that your rights were violated. If you fail to set forth all grounds in this motion, you may be barred from raising additional grounds at a later date. You must state facts in support of the ground(s) which you claim. For your information, the following is a list of frequently raised for relief; however, you may also raise grounds that are not listed here: double jeopardy; illegal detention, arrest, or search and seizure; coerced confession or guilty plea; uninformed waiver of the right to counsel, to remain silent, or to speedy trial; denial of the right to confront witnesses, to subpoena witnesses, to testify, or to effective assistance of counsel; suppression of favorable evidence; and unfulfilled plea agreement.

**Ground One:** _Coerced confession/testimony_
**Supporting Facts (state the facts briefly without citing cases):**

Negative influence on son's from their mother against their father.

Mother promised to buy gifts for son's in return for their testimony against their father.

**Ground Two:** _Effective assistance of counsel_
**Supporting Facts (state the facts briefly without citing cases):**

Counsel failed to acknowledge recanted testimony's from son's. Counsel had Donald Dailey Sr's family members write letters to Mr. Dailey Sr. in court the day of final case review which resulted in Mr. Dailey Sr. to be mentally persuaded into changing his decision on going to trail.

**Ground Three:** _Suppression of favorable evidence_
**Supporting Facts (state the facts briefly without citing cases):**

Letters from son's and family members weren't acknowledged as evidence. Witnesses were not questioned about recanted testimonies. Mothers background was not investagated to see she has a pattern falsely accusing father before. Co-defendant (Re-Millers) plea bargain for testimony against Donald Dailey Sr.

A-2

If any of the grounds listed above were not previously raised, state briefly what grounds were not raised, and give your answer(s) for not doing so: _____

_____

_____

   Wherefore, Movant asks that the Court grant him all relief to which he may be entitled in this proceeding.

_N/A_____
**Signature of Attorney (if any)**

   I declare the truth of the above under penalty of perjury.

_5-31-05_____
**Date Signed**

_Donald Lee Dailey Sr._____
**Signature of Movant**
**(Notarization not required)**

A-3

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR KENT COUNTY

## <u>CERTIFICATE OF SERVICE</u>

I, Donald Dailey SR         , hereby certify that I have served a true and correct

copy of the attached Motion for Postconviction Relief upon the following party on this _____

day of _____, 2005

_____, Esquire
**Deputy Attorney General**
**Department of Justice**
**102 West Water Street**
**Dover, DE     19901.**

5-31-05
**Date Signed**

Donald Lee Dailey Sr.
**Signature of Movant**
**(Notarization not required)**

# Argument

The Lower Court's factual findings and conclusions of law are erroneous and misapplied to a Rule 61 motion claim of actual innocence.

## Scope of Review

The scope of review by this Court is de novo. State v. Cordon, Del. Super. Ct., ____ A.2d ____ (Mar. 13, 2003).

The Appellant presented the Lower Court with three (3) basic claims — ineffective assistance of counsel, prosecutorial misconduct, and judicial misconduct — which so questions the fundamental fairness of proceedings, integrity of the Court, and reliability of the verdict that it has resulted in the conviction of an innocent person. Without exploring the issues via an evidentiary hearing or response

A-4

3

the plea, (A-9). His Honor told Appellant to talk with counsel and reconsider withdrawing; counsel and the DAG came to the bullpen and coerced Appellant with promises of an 8 year sentence and the [threat of] prosecution of his daughter and he for contacting his son via a greeting card. Judge Graves was told of the contact order violation and made no big deal of it, (A-10). Appellant's daughter wrote to him of the threat of prosecution and Brady's pressure to have her beg him to accept the plea, (A-11, 12). Appellant's sister also wrote to beg him to accept the plea as Brady coerced her into doing, (A-13, 14). Judge Graves accepted the plea and stated that had Appellant not been a "predator" he would had

A-5

given him the seven (7) years negotiated in the plea

but then enhanced the penalty to 35 years, (A-15,16).

Numerous letters were sent to Brady and Judge Graves

wherein the alleged victims recanted their statements,

which were ignored. This Court affirmed the conviction

without considering the Federal question of "predator"

under 42 U.S.C.A. § 14071 (a)(2)(C)(D)(E) and held that

because Appellant had a prior sex offense the penalty

could be enhanced under the state "repetitive" provision,

(A-19 to 21). Judge Graves subsequently received additional

recantation letters which he, the prosecution, and

counsel refused to conduct a hearing on, (A-22).

The law is clear on the issue. Refusal to allow a

A-6

11

statute language ; and, is not supported by the record. To

determine one a sexual "predator" the Court must first

have a State panel of experts in the treatment and

behavior field determine him/her such. <u>42 U.S.C.A.§ 14071</u>

<u>(a)(2)(c)(D)(E)</u>. The Lower Court enhanced the sentence to

35 years. Under the "repetitive" statute the sentence is

to be enhanced by 10 years only. <u>SENTAC Benchbook</u>, 2005.

" Defendant may collaterally attack a conviction
on a federal ground in State court. This rule gives
a state defendant claiming a federal ground for
collaterally attacking a conviction the opportunity
of doing so in State court."
   <u>State v. Conyers</u>, 443 A.2d 1264 (Del. Super. Ct. 1979),
aff'd, 422 A.2d 345 (Del. 1980).


Our Courts will address the federal law, if the claims

constitute a miscarriage of justice that deals with the

A-7

14

and recanted, (A-22). The Lower Court did not conduct the required hearing on recantation issues or Rule 61. Weedon. The recantations demonstrate that an innocent person has been convicted and sentenced, which this Court prohibits. Weedon ; Rules of Evidence, 504(a) ; Super. Ct. Crim. Rules, Rule 61 (i) (4) ; Innocent Protection Act ; Schlup v. Delo, 513 U.S. 298, 324-29 (1995). [5]

The various other actions by counsel, the prosecutor,

---

5. Dretke v. Haley, 541 U.S. 386 (2004) ; Kirk v. Carroll, 243 F. Supp 2d 125 (D. Del. 2003) ; Johnson v. Carroll, 327 F. Supp 2d 386 (D. Del. 2004) ; Glass v. Vaughn, 65 F. 3d 13 (3rd Cir. 1995) ; Sweger v. Chesney, 294 F. 3d 506 (3rd Cir. 2002) ; Fischetti v. Johnson, 384 F. 3d 140 (3rd Cir. 2002); Johnson v. Pinchak, 392 F. 3d 551 (3rd Cir. 2004).

A-8

and Lower Court Judge mentioned, _supra_, in pages 7 to 11

likewise aid in the conviction and sentencing of an

innocent person.

> " Under subdivision (i)(5) of this rule, certain procedural
> bars will not apply to a colorable claim that there was
> a miscarriage of justice because of a constitutional
> violation that has undermised the fundamental legality,
> reliability, integrity, and fairness of the proceedings
> leading to the judgment of conviction. "
> _State v. Andrus_, Del. Super. Ct., ___ A.2d ___ (Mar. 12, 2003)

The promise of counsel for 8 years, the threat by the

prosecutor to bring charges against Appellant and his

daughter, the threats by the Judge; and, the coercive

letters from Appellant's daughter and sister — at the

behest of counsel — so overbourne Appellant's will as

to make the accepted plea involutary, et cetera. See,

A-9

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DONALD L. DAILEY, SR., | § | |
| | § | No. 490, 2006 |
| Defendant Below- | § | |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | in and for Sussex County |
| STATE OF DELAWARE, | § | Cr. ID No. 0210012813 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: January 2, 2007
Decided:  February 5, 2007

Before **BERGER**, **JACOBS** and **RIDGELY**, Justices.

## O R D E R

This 5th day of February 2007, upon consideration of the appellant's opening brief and the appellee's motion to affirm pursuant to Supreme Court Rule 25(a),[1] it appears to the Court that:

(1)  The defendant-appellant, Donald L. Dailey, Sr., filed an appeal from the Superior Court's July 25, 2006 order denying his second motion for postconviction relief pursuant to Superior Court Criminal Rule 61 and the Superior Court's August 16, 2006 order denying his motion for reconsideration. The plaintiff-appellee, the State of Delaware, has moved to

---

[1] The Court also has considered the appellant's response to the State's motion to affirm, which was filed with the Court's permission. Supr. Ct. R. 25(a) (iii).

affirm the Superior Court's judgment on the ground that it is manifest on the face of the opening brief that the appeal is without merit.[2]  We agree and affirm.

(2)    In August 2003, Dailey pleaded no contest to three counts of Rape in the Third Degree.  The charges arose from incidents involving Dailey's two minor sons, who were forced to engage in sexual intercourse with Dailey's girlfriend while he either watched or participated.  He was sentenced to 35 years of Level V incarceration, with credit for 289 days, to be suspended after 14 years for 21 years at decreasing levels of supervision. This Court affirmed Dailey's convictions and sentences on direct appeal.[3]

(3)    In this appeal, Dailey claims that the Superior Court erred and abused its discretion by: a) enhancing his sentences based upon an erroneous factual finding; b) denying his postconviction motion without requiring his counsel to respond; and c) failing to hold an evidentiary hearing to consider his sons' recantations of their statements.

(4)    Dailey's first claim is that the Superior Court based its sentences on an erroneous factual finding.  Specifically, Dailey argues that the judge improperly enhanced his sentence after erroneously finding him to be a "sexual predator."  The record reflects that this issue was previously

---

[2] Supr. Ct. R. 25(a).
[3] *Dailey v. State*, Del. Supr., No. 438, 2003, Holland, J. (Mar. 4, 2004).

2

decided in Dailey's direct appeal. There, this Court determined, first, that Dailey's sentence was within the statutory limits and, second, that the sentencing judge did not rely on impermissible factors when sentencing Dailey.[4] This Court held that "[t]he . . . judge's reference to Dailey as a 'sexual predator' was based upon the nature of the crimes for which Dailey was being sentenced and Dailey's criminal record. Those circumstances were proper factors to consider." We, thus, conclude that Dailey's first claim is procedurally barred as formerly adjudicated.[5] Moreover, we find no evidence of a constitutional violation that would permit our consideration of the claim notwithstanding the procedural bar.[6]

(5)    Dailey's second claim is that the Superior Court improperly denied his postconviction motion without requiring his counsel to respond. In the case of a postconviction motion that alleges ineffective assistance of counsel, "[t]he [Superior Court] judge may direct the lawyer who represented the movant to respond to the allegations."[7] Directing counsel to respond is, thus, a matter of the Superior Court's discretion and is not mandatory. In light of the fact that the grounds for Dailey's current ineffective assistance of counsel claim were already addressed in his first

---

[4] *Weston v. State*, 832 A.2d 742, 746 (Del. 2003).

[5] Super. Ct. Crim. R. 61(i) (4).

[6] Super. Ct. Crim. R. 61(i) (5).

[7] Super. Ct. Crim. R. 61(g) (2).

postconviction motion,[8] we find no error or abuse of discretion on the part of the Superior Court in summarily denying Dailey's second postconviction motion without requiring a response from his counsel.

(6)    Dailey's third claim is that the Superior Court failed to hold an evidentiary hearing to consider his sons' recantations. This claim also was addressed in Dailey's first postconviction motion.    It is, therefore, procedurally barred in this proceeding,[9] and there is no evidence of a constitutional violation that would permit our consideration of the claim notwithstanding the procedural bar.[10]  The Superior Court cannot be faulted for failing to schedule an evidentiary hearing to consider Dailey's sons' recantations in the absence of any evidence that there was reason to question the veracity of their trial testimony.

(7)    Finally, because there was no error or abuse of discretion on the part of the Superior Court in denying Dailey's claims, there was accordingly no basis for the Superior Court to grant Dailey's motion for reconsideration. We, therefore, find that claim likewise to be without merit.

(8)    It is manifest on the face of Dailey's opening brief that the appeal is without merit because the issues presented on appeal are controlled

---

[8] Super. Ct. Crim. R. 61(i) (4).
[9] Id.
[10] Super. Ct. Crim. R. 61(i) (5).

A-V³

4

by settled Delaware law and, to the extent that judicial discretion is implicated, there was no abuse of discretion.

NOW, THEREFORE, IT IS ORDERED that, pursuant to Supreme Court Rule 25(a), the State of Delaware's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED.

BY THE COURT:

Jach B. Jacobs
Justice

A-14

SUPERIOR COURT
OF THE
STATE OF DELAWARE

T. HENLEY GRAVES
JUDGE

P.O. BOX 746
COURTHOUSE
GEORGETOWN, DE 19947

March 25, 2004

James W. Adkins, Esquire
Department of Justice
114 E. Market Street
Georgetown, DE 19947

John F. Brady, Esquire
P.O. Box 251
Georgetown, DE 19947

    RE:    State of Delaware v. Donald L. Dailey
          Case No. 0210012813

Dear Counsel:

    The enclosed letters were sent to the Court. I felt I should provide them to you to do as you think appropriate.

Very truly yours,

T. Henley Graves

jfg
Enclosures
cc:    Prothonotary
        Donald Dailey, Sr.
        Donald Dailey, Jr.

A-15
A-22

November 28, 2007

To Whom It May Concern:

This letter is to inform you that in November 2002, myself and Linda Dailey whom at the time was my father Donald Dailey's wife; took my two brothers Donald Dailey Jr. and Jason Dailey to see attorney Mr. Chasanov in Georgetown. At that time my two brothers gave a statement to Mr. Chasanov regarding Donald Sr. case that involved the two boys. They also both wrote letters in the office and gave them to Mr. Chasanov. If you have any questions or concerns you may contact me at (302)422-2248.

Sincerely,

Michele Jessup

Karen Jefferson    12/6/07
KAREN F. JEFFERSON
NOTARY PUBLIC-DELAWARE
MY COMMISSION EXPIRES 1-13-09

A-16

07/05/04

Dear Judge Graves,

It's me Donald Dailey Jr again. I'm writing you on behalf of my dad Don Dailey sr. I also wanted to let you know I overheard a phone conversation between Deborah Bemiller and my mom, and Debbie was telling her how she was going to lock dad up, because he chose Linda over her. and I have heard my mom say she wants dad in jail. Debbie hates my dad and when I had intercourse with debbie dad was not there She is just saying that, also it has no affect on me because it never happened with my dad. and as far as me having intercourse with debbie that didnt affect me because she was not my first partner over 18 So I dont think my dad Should be in Jail for something he didnt even know about. It was my choice to have intercourse with her and my dad was never around when It happened. So once again thank you for your time and consideration.

Witness #1 _Meii B. M<u>____</u>

Witness #2 _Kevil___Me____

Sincereley,
Donald Dailey
Donald Dailey

A-17

3-17-04

To the honorable Kenley I Graves,
I Donald Dailey Jr am writing
you on behalf of my father
Donald Dailey Sr. It was brought
to my attention that there
was a pre-sentencing investigation
report sent to me and was
filled out and sent back, but
I never saw that report
so I will give you mine now.
Yes I did have intercourse with
Deborah Be miller but my father
was not there, me and my
dad were in an arguement
at the time because I wanted
to move back with my sister
and he wouldn't let me. also
my dad was trying to get
with another girl and didn't
want to marry debbie so she
got mad and I went along
with her and said it happened
not knowing the trouble it caused.
I just want to say my father
was never there I willingly had
intercourse with her because I →

A-18

was mad at my father. as far
as the report sent to my house
I never even saw it. I just
think I am doing the right
thing by coming forward and
telling the truth, because I
would love to be able to spend
time with my dad again while
he is still young. we may have
faught but he was still my best
friend. me and my brother
both went to Chasnow's office on
a saturday morning and explained
to him how my dad was never
around when we had intercourse
with Deborah Bemiller, but I dont
think that was ever brought
to your attention. also the dates
that were given to Butler Richardson
were all false and my dad has
several letters from his employers
how he was driving out of town
and state at those times. they
were also notorized and he has
several letters proving his innocence.
I also unaware of my dads sentencing

A-19

date, if I would have known
I would have been there to
tell the truth. I was also there
in 1993 and I know what happened.
my dad would not marry christinas
mom so she tried to have my
dad locked up, christina didn't
want him locked up, because they
never slept together. her boyfriend
chris was there and I know this
because I slept on the floor next to
them. So could you please consider
my letter. and maybe reread it
twice. Thank you for your time
and consideration.

                         Sincerely,
                         Donald L. Dailey Jr

Signed and dated
this 18 day of March, 2004
By Donald L. Dailey Jr.

A-20

12-30-03

To the honorable Judge Greaves,

I Donald Lee Dailey Jr am writing you to let you know that I am not effected or emotionally disturbed by what happen between me and Deborah BeMiller. That had no effect on me. What does effect me is the fact that ~~I lied and said~~ ~~my dad was in on on this and he~~ ~~wasnt~~ and now he is in Jail for something he shouldnt be. I was Just mad ~~cus~~ that he wanted me to move back home from my sister Michelle Jessups. I dont know about anyone else but he wasnt there when I did it. And I would Just like for things to go back to normal and my dad to have his freedom back.

Sincerely,
Donald S. Dailey Jr
MD LIC D4014949574

Kent County
State of Delaware
Came before me Donald L. Dailey Jr    A-21
Donna M. Thompson

DONNA M. THOMPSON
NOTARY PUBLIC - DELAWARE
My Commission Expires November 14, 2007

( 1 of 4 )

*Exhibit*

April 6, 2003

To whom it may concern,
I Donald Bailey Jr am writing
concerning my father Donald
Bailey Sr. I'm writing to tell the
truth about the charges against
my father. At the time of my
statement back into october
of 2002 I was mad at my father
at the time, ~~I was pressured by alot
of people to say the things my
brother and I said to the
state police & detective~~. I did have
intercourse with Deborah Bemiller,
at the time of the incidents between
me and Bemiller my father was
never present. My father was never
aware of the incidents until he was
arrested in october of 2002. also
most of the dates that were given
my father and I were working
driving trucks. while my father
and I were working Deborah would
have guys over and slept with
him we soon found out. I love
my mother and my father
and I am sorry to say that
on ~~several~~ occasions I have heard
~~her say,~~ " that she would see my
father in prison for the rest of his

A-22
→
mood

life no matter what it takes".
so the reason for this letter
is to tell whom ever that
the statement that was given
was false because I was pressured
by many people and was mad
at my dad at the time. I am
truly sorry for everything,
my brother and I have
caused. Thank you for your
time and consideration.

Sincerely,
Donald Wiley Jr

C/C                                        26365 Burrsville Rd lot B
Denton, Maryland 21629

A-23

Page (1)

Exhibit -

Dad, —                                        12-6-02

hey whats up? me Just sitten here
thinking about you and caot
stop crying. Im sorry for telling
them a big story. I want you
out, I miss you and the old
times with rigs up over night
Crusin down the Highway
reading you off the directions
drinking Our coffee. Halta the
old day's the new days now
are so Shitty & look Im
going to give linda my
caress for when I get Sent
Away OK? Anyways life Sucks
for me now and everything
hit me all at Ionce a very
big disturbance and a huge.
Ckwnhill bow. Yeah I stole
a 1989 F-150 plick up truck
and went down a eirtroad
like 80 mph and lost control
and wrecked it and went
to court to get my 1 year
Sentence in Kent youth in

A-24

Chestertown Md. I didn't
really care about life and
wished I was dead then
and now still kinda do.
You locked up 4-Life probably
mom a Bitch and every
thing else. Well look Im
gonna write you later and
Send ya Some picks of
me to you so love you

Jason (Your Son)

Dad + Son Never / apart
hope you make it I'll
try.

Dad

may bless God you

Jason

e/c

This is stuff (Brady) told my Family and gave them pen & paper so
They could write this upstairs while they all were in the court Room, Then (Brady)
carried (all) these letters down to me to read. (Brady told (all) my family
this stuff they said
Dad

Hey its me shelly I know
you are innocent and Dad By God I
know you don't want to do no jail
time... But Dad if you don't take this
plea theres a good chance you will
be convicted and serve lots more
time. Mr. Brady has explained everything
And also showed me a copy of the
card ... I Sn't Jason please believe
me I'm truley sorry I know you
told me to tear the letter up and don't
send it but I was trying to get
thru to Jason But I will fight this
and I will take the fall for this
but this is minor. Dad I feal that
you should take this plea before you get
mad at me I know you dont want to
do no time at all but Mr. Brady said
you will only do 5 years on 5 because
you have some time in and Doug
Said to tell you he loves you and he wants
you to take the plea. Dad I love you
And so Does DOUG so please for
both of us take this plea today.
When you called last night I was on the
phone w/ Jimmy I'm sorry + didn't click
over. Dad Dons Sr. + I need you
So Please Do this for us because
We would rather you do 5 then 50-100
And scares its over he can come see
you. His words were please tell Dad to
take this plea. I talk to him last night.
So Dad PLEASE DO it for us we
A-26

want you home in 5 years not
50-100. I love you and we will always
be here for you. Please know I would
never tell you to do anything that I
thought was wrong. And dad like I
said I know your innocent. Theres
alot that the jury could pick out.
to convict you. Dad please for me
And Dad Sr. take this plea so you
can come home to us in 5 yrs.
Rather then you never come home again
And you will always have a place to
stay with me. Well Dad we have to
go now. I love you and from
Daughter to Father please do this?.
I love you.
                    Shelly          Aug. 6, 2003

A-21

Exhibit — 8

9-20-03

To Whom it may Concern:
   Supreme Court of Delaware,
   I Michele Jessup am
writting concerning my father
Donald Lee Dailey Sr. My concerns
are the help that he did not
recieve from the two Attorneys
that represented him.
   The first Attorney was Mr.
Chasnov. Mr. Chasnov represented
My dad the first couple months
of his Arrest. I called Mr.
Chasnov several times left
messages and he never would
returns my calls concerning
my dad. Things like getting
police reports getting other
important papers which would
have been Mr. Chasnov's
responsibilies my Dads wife
Linda Dailey had done.
   Second was Mr. John Brady
Whom was State Appointed

A-28

to my Father. MR Brady
Convinced myself my Aunt
Carolyn Duval and Linda Bailey
my dads wife to write a
letter to my dad while he
was down stairs in the
bull pin one day in cort to
convince my dad and beg him
to take a plea when my
dad is innocent. Second
MR. Brady on several
occasions seven times that
I know to be a fact told
myself and my dads wife
that he was gonna go see
my dad to discuss the case
and he never showed up.
Several times I called
left messages and paged
MR. Brady and he would not
return my calls. The day before
my dads last court date I
spoke with MR Brady and
I asked him what did it
look like for my dad and
he said he had spoke with

A-29

MR. Atkins the state prosecutor
and that my Dad was only
gonna get seven years
the plea that my dad was
given. He said he was sure
the judge was gonna accept
and go with what the state
recomended which turned out
to be a lie. He also told me
After my dad's trial that
he had seen judge Graves
in the hall way and that
judge Graves had told him
that my dad was lucky because
he wanted to give my dad
35 years. I just don't believe
that either one of these
attorneys did there job or
kept promises that they made.
MR. Brady told my Dad and
our faimly that my Dad had
plenty of proof to show that
my dad knew nothing about
the situation and definitly
wasn't there at all. And also
in one breath tryed to get

A-30

our faimly to convince my dad to take a plea And in another breath he told us there was nothing to worry about because my Dad was innocent and he was gonna prove that. So there is my concern's that I thought was important to bring to your attention. Thank you for your time and consideration.

Sincerely,

Michele Jessup

Signed and dated this 2⁤4 day of Sept, 2003
By Michele Jessup



A-31

To whom it may concern.

I am writing concerning my brother Danold B. Dailey Sr. On the day of his sentencing his appointed lawyer Mr. Brady called myself, his wife, and his daughter, out in the hallway and told us we would have time to talk to my brother and convience him to take his plea that was offered to him because it was possible he could do a life sentence. So Mr. Brady gave the three of us a piece of paper and pen and said if you will write these letters I'll take them down to him. (Dan) in the bull pen. He said it was in the best interest that

A-32

We write the letters
because he thought
Dan should take the
plea and with the
family begging him.
he knew thats what
my brother would do.
So therefore because
of the scare mr. Brady
gave all of us. We
wrote the letters and
Brady took them down
to my brother.

Thank You
Carolyn DuVal
Aug. 88, 2005

A-33

1    the State is eight.

2              THE COURT:   Do you understand that?

3              THE DEFENDANT:   Yes, sir.

4              THE COURT:   Is it your desire to withdraw

5    your guilty plea?

6              THE DEFENDANT:   Yes, sir.

7              THE COURT:   This will go down for trial.

8    There is no final case review, this is it; do you

9    understand that?

10             THE DEFENDANT:   Yes.

11             THE COURT:   I will tell you what, I will

12   bring him in next week.

13             Would you keep that plea open until next

14   week?

15             MR. ADKINS:   Yes, sir.

16             THE COURT:   I will bring him in next week.

17             MR. BRADY:   I will go out to visit him next

18   week, Your Honor.

19             THE COURT:   I will give you time to think,

20   give you time if you want to reflect on it.   Next

21   Wednesday is final case review.   I will set up a very

22   quick trial date.   The case is going on, if possible,

23   I would like to try it in the month of August, because

*August 1st, 2003*    2

1              PROCEEDINGS

2          - - - - - - - - -

3          THE BAILIFF:  Your Honor, if you would like

4    to go first to your decision on Donald Dailey.

5          THE COURT:  Mr. Dailey, I have taken into

6    consideration your request to withdraw your guilty

7    plea.

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  I am going to grant that, but I

10   am going to also advise you to go down and talk to

11   your lawyer either this afternoon or sometime soon,

12   because sometimes -- there is a country song, Thank

13   God For Unanswered Prayers -- you may go from the

14   frying pan into the fryer.  The presentence report has

15   basically that your former girlfriend and your sons

16   are prepared to testify.  I don't know what factors

17   play into that.  You are presumed innocent until

18   proven guilty beyond a reasonable doubt at this point

19   in time, but I am letting you withdraw the guilty

20   plea.

21          That means he is facing?

22          MR. ADKINS:  A minimum 102 years up to eight

23   life terms and the recommendation on this plea from

DAVID WASHINGTON
Official Court Reporter

A-5          A-34

1    sentence is a minimum sentence.  This offense

2    occurred before the prior bill, the legislation of

3    the summer.  But it is a sex offense, and that is

4    the reason for the lengthy period of probation.

5         As to 03-01-0465, 10 years incarceration,

6    suspended after serving two years, which is the

7    minimum mandatory, for eight years Level 3

8    probation, consecutive.

9         As to 03-01-0470, 10 years, suspended

10    after serving two years minimum mandatory, for

11    eight years probation, and that eight-year

12    probation is likewise consecutive.

13         The Department of Corrections has the

14    discretion to move you from three to two to one,

15    one to two to three.  There is no unlawful contact

16    with Donald Dailey, Jason Dailey.  No contact with

17    Sheri Dailey.  No uninvited contact -- excuse me.

18    No contact with Deborah BeMiller.

19         You shall participate in any recommended

20    mental health, substance abuse treatment programs

21    at the discretion of probation.  You shall complete

22    a sexual disorder counselling program.  You shall

23    participate in a parenting class program.

1    thought long and hard about the recommendations

2    that have been made, because I consider those

3    recommendations to be weighty, coming from both the

4    State and the defense in the negotiation process.

5    But in this case, I cannot follow the

6    recommendation, Mr. Dailey, because my concern is

7    that people who are involved in unusual, or I will

8    say unusual sex with others, and those others are

9    minors that are unable to consent, if you have done

10   it once, you will probably do it again.  If you

11   have done it twice, the likelihood and probability

12   goes much, much higher.

13        Part of my responsibility, since these are

14   violent crimes, is to protect the community from

15   sexual predators, and I think you are a sexual

16   predator.  You go about it in a different way.

17        As to 03-01-0464, restitution to Sheri

18   Dailey, $218.70.  Pay the costs, the defender's

19   assessment.  You are to be incarcerated for a

20   period of 15 years.  After serving 10 years, the

21   balance is suspended -- excuse me.  Credit for 289

22   days.  The balance is suspended for five years

23   Level 3 probation.  The first two years of this

A-35

609

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

RANDOLPH DICKERSON, et al.,   )

                        )
         Plaintiffs,   )

**ORIGINAL**

                        )
         v.           )   Civil Action No. 10256
        _Castle_      )
THOMAS R. CARPER, Governor   )
of the State of Delaware,    )
et al.,                 )

         Defendants.   )

## MEMORANDUM OPINION

Date Submitted: August 11, 1995
Date Decided: September 7, 1995

Neilson C. Himelein, Esquire, of COMMUNITY LEGAL AID SOCIETY, INC., Wilmington, Delaware; and Elizabeth Alexander, Esquire, and Mark Lopez, Esquire, of NATIONAL PRISON PROJECT OF THE AMERICAN CIVIL LIBERTIES UNION, Washington, D.C., Attorneys for Plaintiffs.

John K. Welch, Esquire, and Carl C. Danberg, Esquire, of DEPARTMENT OF JUSTICE, Wilmington, Delaware, Attorneys for Defendants.

CHANDLER, Vice Chancellor

A-36

Plaintiffs filed this class action lawsuit against the State of Delaware, its Department of Correction (the "Department"), the Governor and various other state officials on behalf of prisoners incarcerated by the Department. After several years of discovery and negotiations, the parties reached a settlement agreement (the "Agreement"). This Court entered an order approving the Agreement on November 28, 1988. The Agreement covers all four major prisons operated by the Department. It addresses overcrowding, health care services, legal access and environmental conditions at these facilities. The Agreement obligates the defendants to provide information to counsel for plaintiffs for monitoring purposes. The Agreement contemplated implementation of its provisions over three years, ending in 1991.

One year after the approval of the Agreement, the plaintiffs filed a motion to show cause why defendants should not be held in contempt for alleged violations of the Agreement. While the motion was pending, defendants took many actions to assure compliance with the Agreement. When the Court heard plaintiffs' motion, it found defendants to be in compliance with the Agreement. See Dickerson v. Castle, Del. Ch., C.A. No. 10256, Chandler, V.C. (Oct. 15, 1991). The Court declined to consider whether defendants were in violation of the Agreement prior to taking action to improve conditions at the prisons in response to plaintiffs' motion. Id.

Plaintiffs filed a second motion to show cause which was settled by stipulation (the "Stipulation"). The Court entered

A-31

*Exhibit-*



# COMMUNITY LEGAL AID SOCIETY, INC.

Main Office                    (302) 575-0660
913 Washington Street, Wilmington, Delaware 19801

June 9, 1989

W. Laird Stabler, III, Esq.
Office of the Governor
State Building, 12th Floor
820 French Street
Wilmington, DE  19801

David A. White, Esq.
Department of Justice
State Building, 7th Floor
820 French Street
Wilmington, DE  19801

    Re:  Dickerson v. Castle, C.A. No. 10256

Dear Laird and David:

    In the event that you have not been notified, this is to
inform you that the Department has requested a one year extension
to clean and balance the ventilation systems at the four
institutions covered by the Agreement. The deadline for this work
is June 30, 1989. The Department has also requested a one year
extension until June 30, 1991 for the renovations to E Building,
A Wing at DCC. At this point, however, I wish to deal only with
the ventilation systems.

    Frankly, I am disturbed and frustrated by the Department's
request. Notwithstanding the fact that the Department agreed to
this undertaking and gave all indications in the maintenance
progress reports from December 1988 through April 1989 that it
would be timely completed, the Department is now seeking an
extension. I relayed this request, which I received on May 30th,
to the class representatives during our meetings of June 1, 2 and
5. Given the serious overcrowding that exists in the prisons, it
was no surprise that there was no support for an extension.
Nevertheless, without agreeing to an extension, I am requesting the
following additional information from the Department:

    •A full, written explanation as to the need for an
    extension;

    •A written report regarding all efforts, with specific
    dates, undertaken by the Department to comply with the
    ventilation requirement; and



**NEW CASTLE CO.** Main Office, 913 Washington Street, Wilmington, DE    (302) 575-0660
SCLAP (Seniors), 913 Washington Street, Wilmington, DE    (302) 575-0666
**KENT COUNTY**    235 S. Queen Street    Dover, DE  (302) 674-8500
**SUSSEX COUNTY**  144 E. Market Street    Georgetown, DE  (302) 856-0038

The United Way

A-38

W. Laird Stabler, III, Esq.
David A. White, Esq.
Page 2.
June 9, 1989

•A written proposal regarding the specific manner the
Department intends to clean and balance the ventilation
systems with a schedule for interim progress reports in
the event the request is granted.

I must receive this information by June 23 in order to better
evaluate the Department's request. I also suggest that we plan to
meet to discuss this matter as well as the other concerns that I
will be addressing in this letter during the week of June 26 - 30.

I am also very concerned about a recent development at Gander
Hill that was brought to my attention by class representatives at
that facility as well as in a recent article that appeared in the
News Journal. As you probably are aware, inmates are sleeping on
mattresses on the floors in the dayrooms of the pods. I have
brought this matter to the attention of Elizabeth Alexander, Esq.
and we believe that this arrangement is inconsistent with the
spirit of the Agreement. Consequently, it must stop or we will be
forced to take action.

Additional compliance issues that need to be addressed prior
to the June 30, 1989 deadline include the following:

•The recent announcement in May's edition of In Re:,
which I received on May 24, has been the Department's
only attempt to contract for attorney supervision of
staff paralegals notwithstanding the language of the
Agreement requiring such a contract "as soon as possible
but no later than June 30, 1989." Because the Department
is required to provide us with information regarding
positions to be filled under the Agreement, I am
requesting copies of all proposals that have been
submitted for this position from David.

•Other Departmental positions which were to have been
filled "as soon as possible but no later than June 30,
1989" include the SCI library technician position and the
third inmate law clerk position at DCC. With respect to
the inmate law clerk, I recently received a description
of that position's primary responsibilities and it
appears that the Department intends to hire an inmate to
copy materials only. If so, this is contrary to what was
intended by the Agreement. Inmate law clerks should be
providing assistance to inmates. Otherwise, there would
be no need for the required 40 hours of training.

A-39

W. Laird Stabler, III, Esq.
David A. White, Esq.
Page 3.
June 9, 1989

Further, as you will recall, prior to the Settlement Hearing, I raised concerns that inmates housed in MSU, closed custody and administrative segregation at DCC would not be permitted physical access to the DCC law library as guaranteed by the Agreement. We agreed to discuss this issue in the future. At the present time, these inmates are only permitted access through a system of requesting copies of specific materials from the main law library at DCC. This system is clearly inadequate and not only violates the provision in the Agreement that "inmates will be assured access to the law libraries at each of the four institutions", but violates established Third Circuit caselaw as well.

It is our position that in order to assure these inmates real and meaningful access, the Department will have to increase its paralegal staff. The increased staff will be required to visit the confined housing units on a regular schedule in order to interview inmates and provide them with the necessary information/advice that is requested. For purposes of our discussions on this issue during the meeting in the last week of June, I suggest that you read the following decisions: Para-Professional Law Clinic v. Kane, 656 F. Supp. 1099 at 1104-1107, aff'd, 835 F. 2d 285 (3d Cir. 1987), cert. denied, 108 S. Ct. 1302 (1988); Valentine v. Beyer, 850 F. 2d 951 (3d Cir. 1988); Peterkin v. Jeffes, 855 F.2d 1021 at 1033-1042 (3d Cir. 1988).

Finally, there are other areas where the Department is interfering with inmates' rights to legal access which must be stopped and written assurances provided that the practices will not be repeated. The practices are occurring primarily at MSU and are as follows:

•Inmates are being consistently denied access to the MSU law library. In all the times I have been at MSU, I have never seen an inmate in the law library.

•On the rare occasion that an inmate is permitted access, he is handcuffed at all times even though the library is surrounded by a locked, chain-link fence.

A-40

W. Laird Stabler, III, Esq.
David A. White, Esq.
Page 4.
June 9, 1989

•All requests to the law library for copying must go through Staff Lt. Watson, the building manager at MSU. Given the fact that the law library staff has been informed as to what materials constitute contraband, future copying requests should be sent directly to the law library in sealed envelopes without first passing through Staff Lt. Watson.

•Inmates in isolation are not being provided legal access. I have received evidence of this occurring at SCI. Thus, there needs to be a procedure for assuring these inmates meaningful legal access.

Please call me if you have questions. If not, I look forward to hearing from you regarding possible dates during the last week in June to further discuss these issues.

Sincerely,

Neil

Neilson Himelein

NH/dcw
cc:    The Honorable Robert J. Watson
       Kathleen Mickle-Askin
       Harold Stafford
       Francene Kobus
       Staff Lt. Watson
       Elizabeth Alexander, Esq.
       Judy Mellen
       Class Representatives

A-41

<u>Affidavit of Michele Jessup</u>

State of Delaware
Sussex County

I, <u>Michele Jessup</u>, duly sworn according to law and the penalties of perjury, on this <u>28th</u> day of <u>January</u> 2008, depose and say:

1.  I am the affiant herein. I am <u>31</u> years old and I am the daughter of Donald Dailey, Sr. Donald Dailey, Jr. and Jason Dailey are my brothers. And Sheri Dailey was my step-mother.

2.  Just shortly before my father's arrest on those bogus charges, I personally witnessed my step-mother, Sheri "threatened to put my father in prison for the rest of his life, if it was the last thing she did, and even if she had to make up false charges against him."

3.  I also personally witnessed my step-mother, Sheri; falsify a complaint against my father in 1995, where she made out a false police report that accused my father of coaching my two brothers, Donald and Jason, to steal food items from a grocery store. Charges that were later dismissed as unfounded.

4.  I and everyone else in our family knows that my step-mother, Sheri Dailey, is the one who bribed and manipulated my two brothers into making another false police report to youth authorities and state police in October 2002, falsely accusing my father of being present and even at times participating in illicit sexual acts that my two brothers were having with my father's live-in housekeeper and tenant, Deborah BeMiller.

5.  My father was arrested on these questionable charges near the end of October 2002, based solely on the false statements his son's Donald, Jr. and Jason Dailey made to youth authorities. Shortly thereafter, sometime in November 2002, my new step-mother, Linda Dailey, and I took Donald Jr. and Jason to attorney William Chasanov's office that had been retained to represent my father. At Mr. Chasanov's office, my brothers both recanted their perjured statements and explained how their mother had coerced and coached them into making these statements against their father in exchange for promised gifts and other privileges.

6.    After out visit to Mr. Chasanov's office, he would no longer communicate with my father, me or any other member of our family, nor would he answer our phone calls, or would he file the appropriate motions to dismiss the bogus charges. He then postponed my father's preliminary (probably cause) hearing twice, over a period of 60 days, to save the state from having to reveal that it lacked the necessary probable cause to arrest my father or hold him over for trail.

7.    The reason my father was denied his preliminary hearing was because Prosecutor James Adkins knew very well that he would've had to release my father just as soon as my two brothers testified at the hearing that they lied in their statements to the youth authorities and that their mother had put them up to it. Again, these false statements from my two brothers were the only probably because the prosecutor had to justify my father's arrest and continue detention.

8.    Then in January 2003, knowing that the statements made by my two brothers were false, prosecutor Adkins still presented these perjured statements to the Grand Jury as probable cause to indict my father.

9.    After Attorney Chasanov postponed and waived away my father's rights to his preliminary hearing (so he could not challenge detention), he then very quietly, secretly and unethically just abandoned my father by withdrawing from the case, without giving the court or my father any advance notice and without returning my father's papers and case file.

10.    Attorney John Brady was than appointed to represent my father, without any advance notice, explanation or opportunity to object to this change of counsel.

11.    Mr. Brady also failed or refused to file any pretrial motions to challenge the unlawful arrest, detention, the detective indictment or the false statements of my two brothers. Without providing my father with a copy of any of the police reports, pretrial discovery, indictment, arrest  warrant, affidavits of probable cause or the statements of my brothers or from Deborah BeMiller, Mr. Brady kept telling my father, and us his family, "that my father did not have an adequate defense, and therefore, no option but to plead guilty. And if he would not agree to plead guilty based upon the state's offer of an (8) year sentences (and instead chose to go to trail) my father would more than likely receive from 102 years up to (8) life sentences."

12.    How do I know that Mr. Brady was telling my father this? Because Brady was telling us, (the family) the very same thing out in the hallway between court proceedings.

13.    After my father entered his first plea, he realized he had made a mistake pleading guilty to something he wasn't guilty of and he immediately moved to withdraw his plea. But on August 1, 2003 when the hearing was being held to consider whether the court would allow him to withdraw the plea, Mr. Brady approached me, my new step-mother, Linda Dailey, and my two aunts and asked us to write these quick, last minute letters, "begging my father to accept the state's plea offer of (8) years, because the prosecutor had assured us that my father would definitely receive (8) life sentences if he withdrew his plea and went to trail." And we wrote these letters and they were hand-delivered to my father in the holding cells, which made him change his mind about withdrawing his plea and persuaded him to enter the second plea on August 6, 2003.

14.    Mr. Brady also told me: "that the prosecutor was threatening to bring charges against me for interfering with a state witness, if my father refused the state's plea offer for (8) years," because I had mailed a letter for my father, addressed to my brothers, Donald Jr. and Jason Dailey, and Mr. Brady advised me to mention this in my letter to my father begging him to take the state's plea offer, and I did.

15.    After Mr. Brady used us to help persuade and coerce my father into changing his mind about withdrawing his plea, we subsequently learned that Mr. Brady was working diligently all along to secure my father's guilty plea, in order to cover-up the legal malpractice and professional misconduct by both the prosecutor James Adkins and William Chasanov. Because Brady and Chasanov were close friends and associates and Brady was working towards a proposed partnership in Mr. Chasanov's law firm. Which is precisely what took place right after they conspired together to persuade my father to plea guilty to a crime he did not commit.

   All of the facts and information provided herein are true and correct, based upon my own personal knowledge and recollections and sworn to under the penalties of perjury for any false information given to authorities.

(Michel Jessup)
(Affiant)
24 N.E. 10TH St.
Milford, De 19963

State of Delaware
County of Sussex

Sworn and subscribed before me on this ___30th___ day of
January ___ 2008.

Notary Public: _____Mary L McDonald_____

My Commission Expires: _____10-25-2009_____

Mary L. McDonald
Notary Public-Delaware
My Commission Expires
Oct. 25,2009