IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DONALD L. DAILEY, SR., )
    Petitioner, )
)
v. ) Civ. A. No.: 07-462-LIF
)
THOMAS L. CARROLL, et al., )
    Respondents. )
)

FILED
FEB 20 2008
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

PETITIONER'S MOTION FOR EXPANSION OF THE RECORD

Pursuant to the appropriate authority the Petitioner requests leave from the Court to be able to expand the record and add the enclosed Affidavit of his daughter, Michelle Jessup, to the Reply to the Respondents' Answer. In support he offers the following:

1. Petitioner is incarcerarted and made every diligent effort to have his daughter timely type and have notarized the document so it could be included in the Reply.

2. The Petitioner was under a deadline to have the Reply mailed and received by the Court no later than February 14, 2008. Time was running out so he completed the Reply and mailed it so he was in conformity with the Court scheduling order.

3. The Respondents will not be prejudiced by the expansion and addition of this supplemental document.

1

4. The interest of justice is best served by allowing the Petitioner leave to add the affidavit.

Wherefore, the Petitioner prays that this Court grant him the leave to expand the record and add the affidavit.

Dated: February 12, 2008.

Respectfully submitted

*Donald L. Dailey, Sr.*
Donald L. Dailey, Sr.
Del. Corr. Cntr.
1181 Paddock Road
Smyrna, DE 19977

X.c.

Gregorg E. Smith
/dld

Certificate of service

I, Donald L. Dailey, Sr., swear that I have served Mr. Gregory E. Smith true copies of my motion for leave to expand the record via mail on this 14th day of February, 2008.

*Donald L. Dailey, Sr.*
Donald L. Dailey, Sr.
Delaware Correctional Center
1181 paddock Road
Smyrna, DE 19977


Mr. Gregory E. Smith, Esquire
Department of Justice
820 N. French Street, 6th Fl.
Wilmington, Delaware 19801

## Affidavit of Michele Jessup

State of Delaware
Sussex County

I, Michele Jessup, duly sworn according to law and the penalties of perjury, on this 28th day of January 2008, depose and say:

1. I am the affiant herein. I am 31 years old and I am the daughter of Donald Dailey, Sr. Donald Dailey, Jr. and Jason Dailey are my brothers. And Sheri Dailey was my step-mother.

2. Just shortly before my father's arrest on those bogus charges, I personally witnessed my step-mother, Sheri "threatened to put my father in prison for the rest of his life, if it was the last thing she did, and even if she had to make up false charges against him."

3. I also personally witnessed my step-mother, Sheri; falsify a complaint against my father in 1995, where she made out a false police report that accused my father of coaching my two brothers, Donald and Jason, to steal food items from a grocery store. Charges that were later dismissed as unfounded.

4. I and everyone else in our family knows that my step-mother, Sheri Dailey, is the one who bribed and manipulated my two brothers into making another false police report to youth authorities and state police in October 2002, falsely accusing my father of being present and even at times participating in illicit sexual acts that my two brothers were having with my father's live-in housekeeper and tenant, Deborah BeMiller.

5. My father was arrested on these questionable charges near the end of October 2002, based solely on the false statements his son's Donald, Jr. and Jason Dailey made to youth authorities. Shortly thereafter, sometime in November 2002, my new step-mother, Linda Dailey, and I took Donald Jr. and Jason to attorney William Chasanov's office that had been retained to represent my father. At Mr. Chasanov's office, my brothers both recanted their perjured statements and explained how their mother had coerced and coached them into making these statements against their father in exchange for promised gifts and other privileges.

6. After out visit to Mr. Chasanov's office, he would no longer communicate with my father, me or any other member of our family, nor would he answer our phone calls, or would he file the appropriate motions to dismiss the bogus charges. He then postponed my father's preliminary (probably cause) hearing twice, over a period of 60 days, to save the state from having to reveal that it lacked the necessary probable cause to arrest my father or hold him over for trail.

7. The reason my father was denied his preliminary hearing was because Prosecutor James Adkins knew very well that he would've had to release my father just as soon as my two brothers testified at the hearing that they lied in their statements to the youth authorities and that their mother had put them up to it. Again, these false statements from my two brothers were the only probably because the prosecutor had to justify my father's arrest and continue detention.

8. Then in January 2003, knowing that the statements made by my two brothers were false, prosecutor Adkins still presented these perjured statements to the Grand Jury as probable cause to indict my father.

9. After Attorney Chasanov postponed and waived away my father's rights to his preliminary hearing (so he could not challenge detention), he then very quietly, secretly and unethically just abandoned my father by withdrawing from the case, without giving the court or my father any advance notice and without returning my father's papers and case file.

10. Attorney John Brady was than appointed to represent my father, without any advance notice, explanation or opportunity to object to this change of counsel.

11. Mr. Brady also failed or refused to file any pretrial motions to challenge the unlawful arrest, detention, the detective indictment or the false statements of my two brothers. Without providing my father with a copy of any of the police reports, pretrial discovery, indictment, arrest warrant, affidavits of probable cause or the statements of my brothers or from Deborah BeMiller, Mr. Brady kept telling my father, and us his family, "that my father did not have an adequate defense, and therefore, no option but to plead guilty. And if he would not agree to plead guilty based upon the state's offer of an (8) year sentences (and instead chose to go to trail) my father would more than likely receive from 102 years up to (8) life sentences."

12. How do I know that Mr. Brady was telling my father this? Because Brady was telling us, (the family) the very same thing out in the hallway between court proceedings.

13. After my father entered his first plea, he realized he had made a mistake pleading guilty to something he wasn't guilty of and he immediately moved to withdraw his plea. But on August 1, 2003 when the hearing was being held to consider whether the court would allow him to withdraw the plea, Mr. Brady approached me, my new step-mother, Linda Dailey, and my two aunts and asked us to write these quick, last minute letters, "begging my father to accept the state's plea offer of (8) years, because the prosecutor had assured us that my father would definitely receive (8) life sentences if he withdrew his plea and went to trail." And we wrote these letters and they were hand-delivered to my father in the holding cells, which made him change his mind about withdrawing his plea and persuaded him to enter the second plea on August 6, 2003.

14. Mr. Brady also told me: "that the prosecutor was threatening to bring charges against me for interfering with a state witness, if my father refused the state's plea offer for (8) years," because I had mailed a letter for my father, addressed to my brothers, Donald Jr. and Jason Dailey, and Mr. Brady advised me to mention this in my letter to my father begging him to take the state's plea offer, and I did.

15. After Mr. Brady used us to help persuade and coerce my father into changing his mind about withdrawing his plea, we subsequently learned that Mr. Brady was working diligently all along to secure my father's guilty plea, in order to cover-up the legal malpractice and professional misconduct by both the prosecutor James Adkins and William Chasanov. Because Brady and Chasanov were close friends and associates and Brady was working towards a proposed partnership in Mr. Chasanov's law firm. Which is precisely what took place right after they conspired together to persuade my father to plea guilty to a crime he did not commit.

All of the facts and information provided herein are true and correct, based upon my own personal knowledge and recollections and sworn to under the penalties of perjury for any false information given to authorities.

_____
(Michel Jessup)
(Affiant)
24 N.E. 10TH St.
Milford, De 19963

State of Delaware
County of Sussex

Sworn and subscribed before me on this __30th__ day of __January__ 2008.

Notary Public: __Mary L McDonald__

My Commission Expires: __10-25-2009__

Mary L. McDonald
Notary Public-Delaware
My Commission Expires
Oct. 25, 2009





JONAH J. DAILEY SR.
OCC PADDOCK RD
181 PADDOCK RD
SMYRNA DE 19977

CLERK
US DISTRICT COURT
844 N. King St
Wilmington, DE 19801